**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------- X
```
**Michael Richard Kaye,**                         :
                                                  :
                              Plaintiff,          :
v.                                                :    Civil Action No. 16 Civ. 8558 (LGS)
                                                  :
                                                  :    Hon. Lorna G. Schofield
**CARTOON NETWORK INC,**                          :
**TURNER BROADCAST SYSTEMS, INC.**                :
**CABLE NEWS NETWORK, INC.**                      :
**TIME WARNER, INC.,**                            :
**BOOM ENTERTAINMENT, INC.,**                     :
**REBECCA SUGAR, IAN JONES-QUARTY**               :
**AND DOES 1-10, INCLUSIVE**.                     X
                              Defendants.
```
--------------------------------------------------
```

### KAYE'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Respectfully submitted,

DAMIAN & VALORI LLP
*Counsel for Plaintiff, Michael Richard Kaye*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
*/s/ Melanie E. Damian*
Melanie E. Damian
*Admitted Pro Hac Vice*
Florida Bar No. 99392
Email: mdamian@dvllp.com
Allison Jade Leonard
*Admitted Pro Hac Vice*
Florida Bar No. 870617
Email: aleonard@dvllp.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

   I.   For purposes of this Motion to Dismiss, Plaintiff Undisputedly Owns Copyrights, and Defendants Undisputedly Had Access to the Protected Works ............................................ 2

  II.   A Close Examination of the Initial Episodes of Steven Universe Demonstrate Substantial Similarity. ........................................................................................................................... 3

       A.  Approximately Half of Steven Universe Episode 1 Is Legally Substantially Similar to the Amphoman Series ...................................................................................................... 4

       B.  The Infringing Plot Points Are Not Mere Scènes à Faire or Unprotectible Ideas. ....... 7

       C.  The Steven Universe Character is Substantially Similar to Kaye's Amphoman Character ...................................................................................................................... 10

       D.  Defendants' Attempts to Discredit Kaye's Analysis of the Substantial Similarities Between Amphoman and Steven Universe Must Fail. .............................................. 11

 III.  Discovery Is Necessary to Determine the Full Scope of the Infringement in Order to More Fully Assess Substantial Similarity. ..................................................................................... 14

 IV.  The Claims Against TBS Should Not Be Dismissed, Or Else Kaye Should Be Granted Leave to Amend. ................................................................................................................... 15

CONCLUSION ........................................................................................................................ 17

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......................................................... 2

*Banff Ltd. v. Ltd., Inc*.,
    869 F. Supp. 1103 (S.D.N.Y. 1994) ....................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................. 2

*Chambers v. Time Warner, Inc*.,
    282 F.3d 147 (2d Cir. 2002) ................................................................................................. 14

*Foman v. Davis*,
    371 U.S. 178  (1962)............................................................................................................... 15

*Gaiman v. McFarlane*,
    360 F.3d 644 (7th Cir. 2004) .................................................................................................. 7

*Glob. Network Communications, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ................................................................................................... 9

*Hoehling v. Universal City Studios, Inc*.,
    618 F.2d 972 (2d Cir. 1980) ............................................................................................... 1, 7

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
    71 F.3d 996 (2d Cir.1995) ..................................................................................................... 4

*Kodadek v. MTV Networks, Inc*.,
    152 F.3d 1209 (9th Cir. 1998) ............................................................................................... 3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*.,
    545 U.S. 913 (2005).............................................................................................................. 15

*Pangburn v. Culbertson*,
    200 F.3d 65 (2d Cir. 1999) ................................................................................................... 15

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) ................................................................................................. 2, 4

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc*.,
    338 F.3d 127 (2d Cir.2003) ................................................................................................... 1

*Twin Peaks Productions, Inc. v. Publications Intern., Ltd*.,
    996 F.2d 1366 (2d Cir. 1993) ................................................................................................ 8

*Warner Bros. Inc. v. Am. Broad. Companies, Inc.*,
  720 F.2d 231 (2d Cir. 1983) ................................................................................................ 2

**Statutes**

17 U.S.C.§ 410(c) ................................................................................................................ 3

**Other Authorities**

2 Patry on Copyright § 4:25 ................................................................................................ 8

iv

## INTRODUCTION

Plaintiff and Artist Michael Richard Kaye ("Kaye") is entitled to have a jury determine whether the *Steven Universe* cartoon series owned and promoted by Defendants infringes Kaye's original, copyrightable and copyrighted expression in his *Amphoman* comic world, as embodied in Kaye's more than 31 copyright registrations covering various protected expressions of the *Amphoman* universe. *Steven Universe* copies too many elements of *Amphoman*'s protectable expression to be a mere coincidence: Not only are both bodies of work built on the core expression of a universe where gems bestow magical powers, but both utilize dozens of the same expressions of that core concept. See Part II infra. Kaye states a claim for copyright infringement [Dkt. 1], and Defendants' Motion to Dismiss Kaye's Complaint [Dkt. 39, 40] should be denied.

## ARGUMENT

In this case, Plaintiff has alleged and will prove the elements of copyright infringement, namely that "(1) unauthorized copying of the copyrighted work occurred, and (2) the infringing work is substantially similar." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir.2003). Because substantial similarity is "customarily an extremely close question of fact," judgment as a matter of law "has traditionally been frowned upon in copyright litigation." *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980), *citing Arnstein v. Porter*, 154 F.2d 464, 474 (2d Cir. 1946). While the Second Circuit has allowed that a District Court may resolve the question of substantial similarity as a matter of law at the motion-to-dismiss stage, such determinations should be rare, and is not appropriate here, where a reasonable factfinder could find the copyrightable elements of the two universes to be substantially similar.

In ruling on the motion to dismiss, the court must be "mindful that a motion to dismiss does not involve consideration of whether 'a plaintiff will ultimately prevail' on the merits, but instead solely "whether the claimant is entitled to offer evidence" in support of his claims." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010). To grant judgment as a matter of law, the Court must find that the "lack of substantial similarity is so clear as to fall outside the range of reasonably disputed fact questions requiring resolution by a jury." *Warner Bros. Inc. v. Am. Broad. Companies, Inc.*, 720 F.2d 231, 239 (2d Cir. 1983). Moreover, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

I.   **For Purposes of this Motion to Dismiss, Plaintiff Undisputedly Owns Copyrights, and Defendants Undisputedly Had Access to the Protected Works**

As an initial matter, at this motion to dismiss stage the Court is required to assume that "all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the court must proceed on the assumption that Kaye is the owner of the works embodied in the 31 registered copyrights alleged, that the works embodied in those registrations contain protectable original subject matter.¶¶ 15-16; see also 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

Moreover, both Kaye's works and Kaye's copyright registrations pre-date the existence of Defendants' *Steven Universe* series by over a decade. Thus, this is not the case where a come-lately is claiming a big hit has infringed it with no timely registration and only "re-created"

artwork.  *See, e.g.*, *Kodadek v. MTV Networks, Inc*., 152 F.3d 1209, 1212 (9th Cir. 1998) (granting summary judgment where plaintiff had no proof he actually drew the characters prior to their appearance on TV).  Rather, the Complaint alleges that Kaye self-published and registered the copyrights in the works going back as far as 1995, Compl. Ex. A., and that Defendants had access to the works prior to launching the *Steven Universe* series in 2013 since Plaintiff advertised *Amphoman* online, generated buzz through online discussions in the public LinkedIn forum, and provided those conversations and other news coverage to CNN, Plaintiff provided copies of *Amphoman* to Defendants.  Compl. ¶¶ 17-19.

## II.    A Close Examination of the Initial Episodes of Steven Universe Demonstrate Substantial Similarity.

Defendants attempt to bury the Court in dozens of episodes *Steven Universe* in order to argue that the expressions between the two series' story lines diverge too much to be substantially similar.  But as Learned Hand once explained, "[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp*., 81 F.2d 49, 56 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).  Therefore, "[i]t is entirely immaterial that in many respects plaintiff's and defendant's works are dissimilar if in other respects similarity as to a substantial element of plaintiff's work can be shown." *Warner Bros. Inc. v. Am. Broad. Companies, Inc*., 720 F.2d 231, 241 (2d Cir. 1983), citing 3 Nimmer § 13.03[B] at 13–38.

*Amphoman*'s story is told primarily in a series of 10 issues of short-form comic books, whereas the infringing *Steven Universe* world spans more than 200 total episodes and spanning

more than 20 hours of programming, plus additional shorts and published comic books.[1]  While the later, derivative episodes of *Steven Universe*, by virtue of the sheer number of episodes, eventually spin a story beyond that of the 10 *Amphoman* issues, a proper comparison between the *Amphoman* origin story and the *Steven Universe* origin story show substantially similar expression of exactly the same premise: a world where gems bestow on their bearers a host of magical powers.

When a work contains both protectable and unprotectable components, the Court "'must attempt to extract the unprotect[a]ble elements from ... consideration and ask whether the protect[a]ble elements, standing alone, are substantially similar[.]' " *Peter F. Gaito Arch.*, 602 F.3d at 66 (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995). Moreover, even if the plaintiff's work contains unprotectable elements, "if a work copies the original way in which the author has selected, coordinated, and arranged these unprotectable elements to such an extent that the copying work is substantially similar to the 'expression of ideas' and 'total concept and overall feel' of the copied work, infringement can occur." *Id.*

### A. Approximately Half of *Steven Universe* Episode 1 Is Legally Substantially Similar to the *Amphoman* Series

Here, the substantial similarity of the two works is best demonstrated by a careful analysis of the original expressions found in the *Amphoman* works as identified in the complaint (and explained in Exhibit B) to episode 1 of *Steven Universe* (D'Angelo Decl. Ex. 15).  While the complaint identifies at least 60 similar copyrightable expressions between the two series as a whole – a list that was never intended to be exhaustive – focusing solely on episode 1 of *Steven Universe*

---

[1] Defendant's failure to identify the tenth issue of *Amphoman* when filing materials in support of its Motion to Dismiss just further demonstrates that discovery is required before the factfinder can determine the important issue of substantial similarity.  While claiming to proffer to the Court copies of all cited episodes of *Stephen Universe*, Defendants have pointedly omitted at least 39 episodes which may provide further evidence of infringement.

and the core expressions of *Amphoman* reveals a list of substantially similar expressions that takes up half of the story of that episode. *Amphoman*, at its core, tells the story of powerful gems from another planet containing the soul of a once-living being who is now trapped inside the gem and influences the hero's behavior (13), and having those gems attaching to humans (6) such that once triggered in a non-obvious way (5), they glow (18), can be used to create gem-powered weapons and superhuman abilities, (8), can be activated by mental communication (7) and extend to other items that don't need to bear a gem to be activated (14), and can pop off of the wearer to defend the bearer (19). [2]

These original expressions are copied throughout episode 1 of *Steven Universe*, D'Angelo Decl. Ex. 15, as noted in this second-by-second breakdown:

| Start Time | Stop Time | Expression Per Exhibit B |
|------------|-----------|--------------------------|
| 1:07 | 1:16 | expressions 1, 3, 5, 6, 24, 56 |
| 1:48 | 2:02 | expressions 8 |
| 2:25 | 2:35 | expression 14 |
| 2:42 | 2:49 | expression 6, 24 |
| 3:20 | 3:25 | expressions 4, 8 |
| 4:04 | 4:30 | expressions 3, 4, 5, 6 |
| 4:35 | 4:42 | expression 6, 8 |
| 4:56 | 5:10 | expressions 4, 7, 8, 24 |
| 5:34 | 5:38 | expression 4, 8 |

---

[2] Numbers in parentheses refer to the 60 comparison points set out in Exhibit B to the Complaint.

| Start Time | Stop Time | Expression Per Exhibit B |
|---|---|---|
| 5:45 | 5:52 | expression 6 |
| 5:54 | 6:07 | expressions 4, 7, 8 |
| 6:10 | 6:52 | expression 6 |
| 6:56 | 7:15 | expression 6, 24 |
| 7:16 | 7:42 | expressions 4, 5, 8, 13, 15, 18, 58 |
| 8:01 | 8:06 | expression 9, 14 |
| 8:48 | 8:55 | expression 51 |
| 8:58 | 9:12 | expressions 3, 5, 6, 56 |
| 9:24 | 9:30 | expression 6 |
| 9:32 | 9:38 | expressions 16, 17 |
| 10:08 | 10:13 | expressions 3, 4, 7, 8, 24, 51 |
| 10:15 | 10:25 | expressions 12, 19, 35 |
| 10:48 | 10:54 | expression 6 |

Thus, fully 4 minutes and 22 seconds of the approximately 10 minute Episode 1 of *Steven Universe* directly copies Kaye's protectable expression.

Subsequent episodes of *Steven Universe* continue to utilize these core copyrightable expressions as noted above, and build on them as derivative works while continuing to copy protectable expression from the *Amphoman* universe. For example, in Episode 2 entitled Laser Light Cannon (D'Angelo Decl. Ex. 16), the story focuses on a glowing gem appearing in the sky as a "second sun" and threatening the universe. D'Angelo Decl. Ex. 16 at 1:10-11. This element

6

is directly copied from *Amphoman* Issue 6 page 9 (D'Angelo Decl. Ex. 7) which similarly depicts gems falling from the sky posing a threat. Both Steven (at 7:05) and Amphoman sidekick Bleash (D'Angelo Decl. Ex. 8 (Issue 7 at 5)) discover and use gem-powered weapons to destroy threatening gems.  D'Angelo Decl. Ex. 16 at 10-10:16, D'Angelo Decl. Ex. 8 Issue 7 at page 2.

### B. The Infringing Plot Points Are Not Mere Scènes à Faire or Unprotectable Ideas.

Defendants correctly state that under copyright law, ideas, scènes à faire, and public domain elements are free for the taking, but incorrectly draw the lines between Kaye's protected expression and those unprotectable elements.  As the Second Circuit has cautioned, "in distinguishing between themes, facts, and scènes à faire on the one hand, and copyrightable expression on the other, courts may lose sight of the forest for the trees."  *Hoehling v. Universal City Studios, Inc*., 618 F.2d 972, 979 (2d Cir. 1980). "By factoring out similarities based on non-copyrightable elements, a court runs the risk of overlooking wholesale usurpation of a prior author's expression." *Id.* Defendants' Motion tries to lead this Court into this very trap.

The Seventh Circuit has explained, "the confusingly named doctrine of 'scènes à faire,'" derives from a theatrical term literally meaning "scenes for action" and stands for the proposition that "a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another."  *Gaiman v. McFarlane*, 360 F.3d 644, 659 (7th Cir. 2004).   The term refers to stock plot points or commonplace resolutions of storytelling problems, such as "traditional happy Hollywood endings". 2 Patry on Copyright § 4:25.

Unlike the classic star-crossed lovers or Hollywood ending, there is nothing typical or commonplace about the *Amphoman* world of powerful gems from another planet containing the soul of a once-living being who is now trapped inside the gem and influences the hero's behavior (13), and having those gems attaching to humans (6) such that once triggered in a non-obvious way (5), they glow (18), can be used to create gem-powered weapons and superhuman abilities, (8), can be activated by mental communication (7) and extend to other items that don't need to bear a gem to be activated (14), and can pop off of the wearer to defend the bearer (19).

Nor are these story and character elements merely unprotectable ideas. Taken together, Defendants have misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010).

Importantly, several substantial similarities are found in episodes of *Steven Universe* that were not submitted by Defendants in support of their motion.[3] In both worlds, the main characters destroy recovered gems with their bare hands, or else store them in protective vials. *Compare* D'Angelo Ex. 3 (Issue 2) at p. 3 (.pdf p. 6), to Kaye Ex. A (Ep 29) at 04:25-04:40. Both include story lines with attacking mutants. *Compare* D'Angelo Ex. 9 (Issue 8), at cover (.pdf p. 2) and p. 2 (.pdf p. 5) with Kay Ex. D (Ep. 71) at 9:46-9:50. Both contain story lines with characters emerging from mirrors. *Compare* D'Angelo Ex. 6 (Issue 5) at p. 2 (.pdf p. 5) with Kaye Ex. B (Ep. 46) at 2-2:36.

Moreover, "the concept of similarity embraces not only global similarities in structure and sequence, but localized similarity in language." *Twin Peaks Productions, Inc. v. Publications*

---

[3] By separate letter motion, Kaye is seeking leave to file these episodes with the Court by CD.

*Intern., Ltd*., 996 F.2d 1366, 1372 (2d Cir. 1993). For example, both works discuss the "Power of the Gem." *Compare* D'Angelo Ex. 33 (Ep. 33) at 04:09-04:13; D'Angelo Ex.7 (Issue 6) at .pdf page 4. In both universes, one must "activate" the gems, Compare D'Angelo Ex. 32 (Ep. 31) at 9:48-9:50 to   D'Angelo Ex. 1 at .pdf p. 11, 21, 22.   In both stories, there is a gem "fusion" by which characters combine to create a stronger character *Compare* D'Angelo Ex. 22 (Ep. 12) at 1:21-1:35; D'Angelo Ex. 1 at pp. 6 (.pdf page 10) and 23 (.pdf page 27); see also D'Angelo Ex. 36 (Ep. 37) at 4:30-4:39; 4:50-4:56 (gems fusing and unfusing with humans in *Steven Universe*) and D'Angelo Ex. 1 at .pdf p. 4, D'Angelo Ex. 5 (Issue 4) at 2 (.pdf p. 5) (gems fusing and unfusing with humans in *Amphoman*).

Importantly, the Court cannot and should not take judicial notice of evidence outside the scope of the pleadings in discerning what is original and what is commonplace in stories that mention magical gems, as Defendants advocate, nor should it conduct an independent "basic internet search."  Dkt. 40at p. 14 n. 14.  Defendants' request that the Court do so strays too far from the requirements of a motion to dismiss.  These Wikipedia entries and books are neither "materials integral to the complaint" – nowhere is Zelda or the Jon Graham translation of a Claude Lecouteux work referenced in the complaint – nor a proper subject of judicial notice.  Judicial notice on a motion to dismiss is only appropriate where, for example, a court is taking notice of a court filing in a related matter.  *Glob. Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  On a motion to dismiss, judicial notice cannot be exerted for the truth of the matter asserted within those documents.  Here, it is clear that the extraneous documents are being offered "not to establish their existence, but rather to provide the reasoned basis for the court's conclusion," and as such the material is not appropriate under the judicial notice exception

to the conversion requirement." *Glob. Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). The fact that Defendants have proffered this additional evidence, to which Kaye objects on the basis of hearsay and relevance as well as the impropriety of considering them at this procedure posture, show that this case is not ripe for decision on a motion to dismiss.

But in any event, the fact that other stories about magical gems exist does not mean Defendants get to escape their infringement scott-free, particularly when those other stories show that it is quite possible to tell a magic gem story without commandeering so many substantially similar expressive elements from Kaye's story.

### C. The *Steven Universe* Character is Substantially Similar to Kaye's *Amphoman* Character

"In determining whether a character in a second work infringes a cartoon character, courts have generally considered not only the visual resemblance *but also the totality of the characters' attributes and traits*." *Warner Bros. Inc. v. Am. Broad. Companies, Inc*., 720 F. 2d 231, 241 (2d Cir. 1983) (emphasis added). The court must look at the "extent to which the allegedly infringing character captures the "total concept and feel" of the copyrighted character." *Id.* A finding of substantial similarity "is not precluded where differences in detail 'do little to lessen a viewer's overwhelming impression' that the defendant's products are 'appropriations.'" *Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 111 (2d Cir. 2001).

Here, the characters share enough substantially similar characteristics to constitute copyright infringement. Visually, Amphoman looks like an older version of young Steven Universe, with the same round face, same shaped ears, same dark eyebrows, and similar dark hair. *Compare* D'Angelo

 

10

Ex. 10 (Issue 9) .pdf p. 9, to D'Angelo Ex. 35 (Ep. 35) at 10:25; see also D'Angelo Ex. 23 (Ep. 13) at 06:36 (older Steven).   Both characters mutate as a result of their Gems, which are embedded in their skin. *Compare* D'Angelo Ex. 1 at p. 25 (.pdf p.29) , to D'Angelo Ex. 19 (Ep. 6) at 08:33. Both characters initially activate their powers with a trigger event, something that pushes them to transform and take on the powers associated with their gems.  *Compare* D'Angelo Ex. 1 (Issue 1) pp. 24- 25 (.pdf pp. 28-29) to D'Angelo Ex. 15 (Ep. 1) at 07:23-07:53. Both characters have unusual reactions to mixing their Gems with water.  *Compare* D'Angelo Ex. 1 (Issue 1) 24-25 (.pdf pp. 28-29), to D'Angelo Ex. 19 (Ep. 6) at  10:12-10:20.  And both are awkward, corny, younger brothers, with the awkward jokes that come with that personality.  *Compare* D'Angelo Ex. 6 (Issue 5) at pp. 3 and 6 (.pdf pp. 6 and 9) and Angelo Ex. 7 (Issue 6) at p. 5 (.pdf p. 8), to D'Angelo Ex. 15 (Ep. 1) at 03:48-03:57.  These similarities, taken as a whole, show that the totality of the characters' attributes and traits are substantially similar. *Warner Bros. Inc. v. Am. Broad. Companies, Inc*., 720 F. 2d 231, 241 (2d Cir. 1983).

### D.  Defendants' Attempts to Discredit Kaye's Analysis of the Substantial Similarities Between Amphoman and Steven Universe Must Fail.

Defendants mischaracterize and wrongfully twist Kaye's list of sixty similarities between *Amphoman* and *Steven Universe.*

First, the list is not a "scattershot" list of "random" similarities.  As noted in Part A above, by the sheer volume of *Steven Universe* episodes as compared to *Amphoman* comic source material from which *Steven Universe* is unlawfully copied, *Steven Universe* must of course contain more story lines and additional materials than *Amphoman*.  More importantly, nearly every detail of *Amphoman* is incorporated in some way into the *Steven Universe* world over the course of its run,

all built upon the core similarities identified in Episode 1.  Indeed, for each issue of *Amphoman*,

Kaye has identified a dozen or more protectable, original expressions that have been co-opted by

one or more Steven Universe episodes.  *See* Kaye Decl. at Ex. H.

        <u>Second</u>, Defendant's admonition not to trust the parties' descriptions goes for Defendants'

descriptions as well.  For each criticism levied by Defendants, there is a simple explanation or

clarification:

- *Steven Universe* does depict a character that embeds or fuses with a gem in order to secure a power.  Compl. Ex. B. #1, #9.  The character Ronaldo does exactly this in Episode 33 at 7:32-7:58.  D'Angelo Dec. Ex. 33.


*Figure 1 Screen Capture from Ex. 33*

- Like *Steven Universe*, *Amphoman* depicts gems in different shapes, not just circular gems as contended by Defendants.  D'Angelo Ex. 1 (Issue 1) at .pdf p. 2.

- Both characters share superpowers, including the ability to utilize a gem-powered extra-long amphibian-like tongue and the ability to jump extra high.  Kaye Ex. G (Ep. 87) at 8:01-8:08; Kaye Ex. F (Ep. 84) at 03:00-03:08; D'Angelo Ex. 1 (Issue 1) at .pdf pp. 29-31.



- The powers in *Steven Universe* in the early episodes are unknown to Steven, and he believes his powers are triggered by eating a discontinued ice cream treat in episode 1. D'Angelo Decl. Ex. 15.  And in episode 14, the gem blossoms are

activated by exposure to sunlight, D'Angelo Decl. Ex.10:08-10:27, just as Bleash's

powers are.  D'Angelo Decl. Ex. 8 (Issue 1) at .pdf p. 7.

- The stuffed animal that causes the ground to crumble in Episode 3 appears to be affected by a Gem.  D'Angelo Decl. Ex. 17 (Ep. 3.) at 9-10:40.  The ground also crumbles from gems in a later episode that was excluded from Defendants' submission.  Kaye Decl. Ex. E, (Ep. 79) at 11:30-11:50.

- While certainly teaming up to fight evil is a generalized superhero idea, the characters doing so by fusing gems into entirely new beings and working with other characters that are fused with gems is a copyrightable and copied expression. D'Anglo Decl. Ex. 7 at 3-5 (.pdf pp. 6-8).

- In both stories, the "bad guys" are made so by gems that turn them into red-eyed demonics. Compl. Ex. B. #34.



This characterization, far from being nonsensical, is borne out by the screen

images.  D'Angelo Ex. 1 Issue 1 at p. 26 (.pdf p. 30) (left); D'Angelo Decl. Ex. 25

(Ep. 16) at 2:00-2:30.

13

- The *Amphoman* character's "third eye" referenced in Issue 4 is identified as that in quotation marks by Exhibit B, noting that the "third eye" enables "psychic ability." Compl. Ex. B. at # 47. Kaye did not make up that characterization; his character has called it that since the issues was first published in 2012. D'Angelo Decl. Ex. 5. At p. 7 (.pdf p. 10). 

- The backstory elements cited by Kaye at Complaint Exhibit B. #13, 40, and 48 are fully found in the cited *Steven Universe* episodes, even if they do not use the exact same words.  In Steven Universe, the ancient crystal transforming machine is called the "galaxy works" and Steven talks to his dad about how the Gems "used to travel all over outer space."  D'Angelo Ex. 31 [Ep 28] at 1:00-1:55.

In sum, Kaye does not seek any sort of impermissible monopoly over the superhero story telling genre.  The overwhelming number of similarities between the two groups of works, however, demonstrate a whole cloth adoption of the *Amphoman* expression.  Although the visuals and character names vary, *Steven Universe* has co-opted nearly all of the copyrightable expression found in *Amphoman.*

## III.  Discovery Is Necessary to Determine the Full Scope of the Infringement in Order to More Fully Assess Substantial Similarity.

When material outside the complaint is presented to and not excluded by the court, 'the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion....'"  *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002).  Where, as here, discovery would be pertinent to ensuring all relevant

matter is before the Court, the Court should deny the motion to dismiss and allow the case to proceed.  As set out in the Declaration of Kaye accompanying this response, the Defendants' declaration submitting materials for the court's consideration does not identify all issues of Kaye's works, nor does it identify or provide the court with all episodes of *Steven Universe*. See D'Angelo Decl. (notably omitting episodes 8-10, 18, 20-22,27, 29-30, 32, 36, 38, 44, 46, 55-56, 58-67, 70-73, 75-85).  See Kaye Decl. ¶ 3. While Kaye has been able to submit some of the omitted episodes in response this motion, and those episodes have demonstrated additional actionable similarities, there are episodes to which Kaye does not have access. The additional episodes will further demonstrate the substantial similarity of the two bodies of works, and since no discovery has yet been had Kaye should not be faulted for not having copies of all of the missing episodes to provide to the Court.  Kaye Decl. ¶ 4.

## IV.    The Claims Against TBS Should Not Be Dismissed, Or Else Kaye Should Be Granted Leave to Amend.

The Second Circuit recognizes that "courts must construe pro se pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'  *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  Reading Kaye's *pro se* complaint broadly, it can be fairly understood that Kaye seeks relief from TBS as the parent company of both Defendant CNN and Defendant Cartoon Network because it is through TBS as the parent that the Cartoon Network achieved access to the *Amphoman* materials submitted to its sister company, CNN.  Compl. ¶¶ 2-5, 18.  Thus, Kaye is not seeking to establish alter ego liability, but rather direct infringement by serving as the active conduit for access between CNN and Cartoon Network.  Moreover, even under a plain parent versus subsidiary analysis, TBS could be liable if it is ultimately proven that TBS had both the right and ability to control Cartoon Network, and had a direct financial interest in the infringing

15

activity.  See, e.g., *Banff Ltd. v. Ltd., Inc*., 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994) (noting test for vicarious liability of parent corporation); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 931 (2005) (vicarious liability theory "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer").

In the alternative, Kaye should be granted liberal leave to amend further facts to support this theory.  Rule 15 declares that leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, there has been no delay on Kaye's part, the amendment would not be futile, nor would TBS be prejudiced by granting such leave.  Because a pro se complaint must be read liberally, it should not be dismissed without granting leave to amend at least once when such a reading "gives any indication that a valid claim might be stated." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (citation omitted).

16

## CONCLUSION

For all of the foregoing reasons, this case is note ripe for a decision as a matter of law. Rather, the Court should proceed through discovery and allow the parties to develop evidence on the remaining elements of infringement and damages so that the jury may play its proper role as factfinder and determine whether Defendants have infringed.

Dated: July 14, 2017

Respectfully submitted,

DAMIAN & VALORI LLP
*Counsel for Plaintiff, Michael Richard Kaye*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
*/s/ Melanie E. Damian*
Melanie E. Damian
*Admitted Pro Hac Vice*
Florida Bar No. 99392
Email: mdamian@dvllp.com
Allison Jade Leonard
*Admitted Pro Hac Vice*
Florida Bar No. 870617
Email: aleonard@dvllp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via-e-mail via CM/ECF, on this 14th day of July, 2017, to:  Christian D. Carbonne, Esq., and Frank D. D'Angelo, Esq., Loeb & Loeb, LLP, *Counsel for Defendants, The Cartoon Network, Inc., Turner Broadcasting System, Inc., Boom Entertainment, Inc.* 345 Park Avenue, New York, New York 10154-1895.

*/s/ Melanie E. Damian*
Melanie E. Damian