**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

|  |  |
|---|---|
| MICHAEL RICHARD KAYE, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| | : Civil Action No. 16 Civ. 8558 (LGS) |
| CARTOON NETWORK, INC., TURNER | : |
| BROADCAST SYSTEMS, INC., CABLE | : |
| NEWS NETWORK, INC., TIME WARNER, | : Hon. Lorna G. Schofield |
| INC., BOOM ENTERTAINMENT, INC., | : |
| REBECCA SUGAR, IAN JONES- | : |
| QUARTEY, AND DOES 1-10, INCLUSIVE, | : |
| | : |
| Defendants. | : |
| | : |

------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

 

LOEB & LOEB LLP
Christian D. Carbone (CC-6502)
Frank D. D'Angelo (FD-0911)
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Counsel for Defendants The Cartoon Network, Inc., Turner Broadcasting System, Inc., Boom Entertainment, Inc., Rebecca Sugar, and Ian Jones-Quartey*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...............................................................................................................................1

I. IT IS PROPER FOR THE COURT TO DETERMINE LACK OF SUBSTANTIAL SIMILARITY AS A MATTER OF LAW .............................................1

II. THE COURT IS NOT CONSTRAINED TO ASSUME THAT PLAINTIFF'S DESCRIPTIONS OF THE WORKS ARE ACCURATE, NOR THAT HIS WORKS CONTAIN PROTECTABLE ELEMENTS .........................................................3

III. PLAINTIFF'S ARGUMENTS DO NOT DEMONSTRATE ANY PLAUSIBLE SUBSTANTIAL SIMILARITY BETWEEN THE WORKS ......................4

    A. ALLEGED SIMILARITIES INVOLVING UNPROTECTABLE ELEMENTS IN *STEVEN UNIVERSE* AND "AMPHOMAN" ARE INSUFFICIENT TO SURVIVE A MOTION TO DISMISS ...............................4

    B. THERE IS NO SIMILARITY BETWEEN THE WORKS' PROTECTED ELEMENTS ......................................................................................7

IV. PLAINTIFF'S JUDICIAL NOTICE ARGUMENT IS CONTRARY TO LAW .............10

CONCLUSION ..........................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Scholastic Inc.*,
  739 F. Supp. 2d 642 (S.D.N.Y. 2011) ................................................................................. 4, 9

*Arden v. Columbia Pictures Indus., Inc.*,
  908 F. Supp. 1248 (S.D.N.Y. 1995) ....................................................................................... 10

*Arica Inst., Inc. v. Palmer*,
  970 F.2d 1067 (2d Cir. 1992) ................................................................................................... 8

*Crane v. Poetic Prods. Ltd.*,
  593 F. Supp. 2d 585 (S.D.N.Y. 2009), *aff'd*, 351 F. App'x 516 (2d Cir. 2009) ........................ 2

*DiTocco v. Riordan*,
  815 F. Supp. 2d 655 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012) ................. 9, 10

*Effie Film, LLC v. Pomerance*,
  909 F. Supp. 2d 273 (S.D.N.Y. 2012), *aff'd*, 564 F. App'x 631 (2d Cir. 2014) ................... 2, 3

*Garber v. Legg Mason, Inc.*,
  347 F. App'x 665 (2d Cir. 2009) ............................................................................................ 10

*Hayuk v. Starbucks Corp.*,
  157 F. Supp. 3d 285, 286 (S.D.N.Y. 2016) ............................................................................. 2

*Hoehling v. Universal City Studios, Inc.*,
  618 F.2d 972 (2d Cir. 1980) ..................................................................................................... 2

*Hogan v. DC Comics*,
  48 F. Supp. 2d 298 (S.D.N.Y. 1999) ..................................................................................... 10

*Lewinson v. Henry Holt & Co., LLC*,
  659 F. Supp. 2d 547 (S.D.N.Y. 2009) ..................................................................................... 6

*Littel v. Twentieth Century Fox Film Corp.*,
  No. 89-cv-8526, 1995 U.S. Dist. LEXIS 9340 (S.D.N.Y. July 6, 1995) ............................... 10

*Mallery v. NBC Universal, Inc.*,
  No. 07 Civ. 2250, 2007 U.S. Dist. LEXIS 88960 (S.D.N.Y. Dec. 3, 2007),
  *aff'd*, 331 F. App'x 821 (2d Cir. 2009) .................................................................................... 2

*McDonald v. K-2 Indus.*,
  108 F. Supp. 3d 135, 140-41 (W.D.N.Y. 2015) ...................................................................... 2

*Muhammad v. Wal-Mart Stores East, L.P.*,
   No. 10-CV-6074, 2012 U.S. Dist. LEXIS 108551 (W.D.N.Y. Aug. 2, 2012) ........................10

*MyWebGrocer, LLC v. Hometown Info, Inc.*,
   375 F.3d 190 (2d Cir. 2004) ............................................................................................... 5-6

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ............................................................................................ 2, 3, 6, 7

*Sheldon Abend Revocable Trust v. Spielberg*,
   748 F. Supp. 2d 200 (S.D.N.Y. 2010) ..............................................................................2, 10

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
   338 F.3d 127 (2d Cir. 2003) ................................................................................................7, 9

*Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993)....................................................................................................8

*Warner Bros. Inc. v. ABC, Inc.*,
   720 F.2d 231 (2d Cir. 1983) .....................................................................................................4

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996) ...................................................................................................4, 9

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007).....................................................................................3

**PRELIMINARY STATEMENT**[1]

Plaintiff would have this Court accept as true his gross distortions and blatant mischaracterizations of "Amphoman" and *Steven Universe*, submitted in a desperate attempt to avoid dismissal of his copyright infringement claim. But, under binding Second Circuit precedent, the Court should not give any credence to Plaintiff's mischaracterizations where, as here, they are contradicted by the works themselves. Instead, the law requires that the Court review those works, and, if they are not substantially similar or the similarities concern only unprotectable elements, dismiss Plaintiff's infringement claim on the pleadings—as courts in this Circuit have routinely done. Upon considering the works *as a whole*—as the Court must—Plaintiff's hodgepodge of supposed "similarities" evaporates, and it becomes clear the works are entirely dissimilar in total concept and feel, plot, sequence of events, character, theme, setting, pace, and every other relevant measure. There is no reason to delay this determination. Even if the parties are forced to undergo months of discovery and incur exorbitant costs, at the end of the day the Court will be presented with the exact same works, and will be asked to determine, based on its review thereof, the exact same question: Are they substantially similar as a matter of law? They are not. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

**ARGUMENT**

**I. IT IS PROPER FOR THE COURT TO DETERMINE LACK OF SUBSTANTIAL SIMILARITY AS A MATTER OF LAW**

Plaintiff's claim that determinations of substantial similarity as a matter of law should be "rare" (Opp. Br. at 1) flies in the face of well-settled and binding Second Circuit authority. In

---

[1] This motion was initially filed on behalf of The Cartoon Network, Inc., Turner Broadcasting System, Inc., and Boom Entertainment, Inc. (Dkt. No. 39), and later joined in by Rebecca Sugar and Ian Jones-Quartey (Dkt. No. 46), collectively referred to herein as the "Defendants." All other defined terms in Defendants' memorandum of law in support of their motion to dismiss (Dkt No. 40) ("Moving Brief" or "Mov. Br.") are incorporated herein. References to "Opp. Br." or "Opposition" are to Kaye's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint. (Dkt. No. 48.)

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.* ("*Gaito*"), 602 F.3d 57 (2d Cir. 2010), the Second Circuit recognized "there is ample authority for the proposition that a district court may make [such a determination] on a motion to dismiss for failure to state a claim under Rule 12(b)(6)," citing numerous cases in this Circuit and others endorsing the practice. *Id.* at 64 (citation omitted) (collecting cases). Plaintiff cites misleadingly to *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir. 1980)—decided *30 years* before *Gaito*—for the proposition that such determinatons were once "traditionally frowned upon" (Opp. Br. at 1), but conveniently omits a later passage from that same case in which the Court observed the current trend *away from that traditional approach. See Hoehling*, 618 F.2d at 977. The law is now clear that courts in this Circuit can, and should, determine the issue of lack of substantial similarity as a matter of law, prior to discovery—as they have routinely done in recent years. (Mov. Br. at 11 n.12.)[2]

Discovery is not, as Plaintiff claims (Opp. Br. at 14-15), necessary for this determination. "[T]he Court need only compare the . . . works themselves without having to consider any extrinsic evidence," *Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 591 (S.D.N.Y. 2009) (citation omitted), *aff'd*, 351 F. App'x 516 (2d Cir. 2009), and "[t]he opinions of experts or other third parties are irrelevant to a determination of substantial similarity." *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 205 n.4 (S.D.N.Y. 2010) (collecting cases); *see Gaito*, 602 F.3d at 64 ("no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works") (citation omitted).

Although Plaintiff complains that Defendants "have pointedly omitted at least 39

---

[2] Countless other cases in addition to those cited in Defendants' Moving Brief have dismissed identical claims on the pleadings. *See, e.g.*, *Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 286 (S.D.N.Y. 2016); *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 278 (S.D.N.Y. 2012), *aff'd*, 564 F. App'x 631 (2d Cir. 2014); *Mallery v. NBC Universal, Inc.*, No. 07 Civ. 2250, 2007 U.S. Dist. LEXIS 88960, at *1 (S.D.N.Y. Dec. 3, 2007), *aff'd*, 331 F. App'x 821 (2d Cir. 2009); *see also McDonald v. K-2 Indus.*, 108 F. Supp. 3d 135, 140-41 (W.D.N.Y. 2015) (courts "routinely . . . decide the issue of substantial similarity as a matter of law").

2

episodes which may provide further evidence of infringement" (Opp. Br. at 4 n.1), Plaintiff fails to submit copies of those episodes and does not explain *how* they "*may*" demonstrate infringement. Such innuendo and speculation is insufficient to defeat this motion. Defendants submitted as exhibits the *exact same* 37 episodes that Plaintiff cited in his Complaint (and 5 others further demonstrating the works' vast differences). (Mov. Br. at 3 n.2.) As previously demonstrated, it is hornbook law that a court may consider a representative sample of a purportedly infringing episodic work in determining that no substantial similarity exists. (*Id.*) *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007) (granting dismissal upon review of each purportedly infringing TV episode cited in complaint, and noting policy consideration that forcing court to view all 150 episodes "*would essentially give plaintiffs a free pass to the summary judgment stage*") (emphasis added). Plaintiff ignores such authority.[3]

## II. THE COURT IS NOT CONSTRAINED TO ASSUME THAT PLAINTIFF'S DESCRIPTIONS OF THE WORKS ARE ACCURATE, NOR THAT HIS WORKS CONTAIN PROTECTABLE ELEMENTS

Plaintiff incorrectly states that this Court is "required" to assume the truth of "all" allegations in his Complaint. (Opp. Br. at 2 (emphasis added).) On a motion to dismiss a copyright infringement claim, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions" in the complaint. *Gaito*, 602 F.3d at 64 (citations omitted); *see Effie Film*, 909 F. Supp. 2d at 290. Accordingly, Plaintiff's rampant self-serving mischaracterizations of *Steven Universe* and "Amphoman" are entitled to no deference. Similarly, the Court is not required to assume, based upon the copyright registrations attached to the Complaint, that Plaintiff's works consist entirely of "protectable

---

[3] Similarly, although Plaintiff claims that Defendants did not submit a copy of "the tenth issue of Amphoman" (Opp. Br. at 4 n.1), Plaintiff has not (i) alleged that *Steven Universe* copied material from that issue (Compl. Ex. B) (omitting reference to Amphoman Issue 10), (ii) indicated in his Opposition any reason to conclude that it did, nor (iii) included a copy of such issue (to the extent it exists) with his declaration (Dkt. No. 49).

3

original subject matter." (Opp. Br. at 2.) Instead, the Court must determine for itself whether those works "contain[ ] both protectible and unprotectible elements," and, if so, "take care to inquire only whether the protectible elements, standing alone, are substantially similar." *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (citation omitted). To assume that Plaintiff's works contain only protectable material would eviscerate this test entirely.

### III.  PLAINTIFF'S ARGUMENTS DO NOT DEMONSTRATE ANY PLAUSIBLE SUBSTANTIAL SIMILARITY BETWEEN THE WORKS

Defendants have already chronicled the myriad ways in which *Steven Universe* differs from "Amphoman." (Mov. Br. at 14-22.) Though Plaintiff attempts to brush aside those differences as "immaterial" (Opp. Br. at 3), it is well-settled that "numerous differences tend to undercut substantial similarity." *Warner Bros. Inc. v. ABC, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983) (citation omitted). In fact, courts routinely dismiss infringement claims when the works contain substantial differences, as they do here. *See, e.g.*, *Williams*, 84 F.3d at 588-90 (cataloguing differences in total concept and feel, theme, character, plot, sequence of events, setting and pace, and affirming lack of substantial similarity); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 656 (S.D.N.Y. 2011) (dismissing claim after illustrating "the stark differences between the works"). Faced with these myriad differences, Plaintiff resorts to grossly distorting the works in an attempt to demonstrate similarity.[4]

#### A.  Alleged Similarities Involving Unprotectable Elements in *Steven Universe* and "Amphoman" Are Insufficient to Survive a Motion to Dismiss

As explained in the Moving Brief, the concept of magical gems at the heart of Plaintiff's Complaint is the essence of an unprotectable idea, and is, in any event, expressed in the parties'

---

[4] Plaintiff also distorts and misrepresents his own copyright registrations, claiming that the registrations "pre-date the existence of Defendants' *Steven Universe* series by over a decade." (Opp. Br. at 2.) In reality, **29 of Plaintiff's 31 registrations post-date the show's premiere** on November 4, 2013 (when Plaintiff claims to have seen *Steven Universe* for the first time). (Compl. ¶ 20; *see* Dkt. No. 1, at 13, 15, 17, 20, 22, 25; Dkt. No. 1-1, at 3, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 35, 38, 40, 43, 46, 49, 51, 53.) By Plaintiff's own account, then, he very much is a "come-lately . . . claiming a big hit has infringed [his copyrights] with no timely registration." (Opp. Br. at 2.)

4

works in fundamentally different ways. (Mov. Br. at 13-15.) Plaintiff does not even attempt to distinguish the numerous cases in which courts have dismissed infringement claims involving far greater similarities in ideas, and *scènes à faire* resulting therefrom. (*Id*. at 15-16.) Instead, he describes the use of gems in the two works in increasingly abstract terms in an attempt to portray them as similar. (Opp. Br. at 5, 8.) None of these descriptions withstand scrutiny:

- **"[G]ems from another planet…"**: In "Amphoman," the gems were created on Planet Guiba by King Trell, who "zapped" humans and other living beings with a crystal transforming machine, turning them into inanimate stones, which were later scattered across the universe when a meteor destroyed Guiba. (Mov. Br. at 5.) In *Steven Universe*, there is no King Trell, no Guiba, and no crystal transforming machine. The Gems are not inanimate stones, nor created from living beings; they are walking, talking alien beings from the Gem Homeworld. Moreover, they are not aimlessly scattered by a meteor, but rather come to Earth with the specific aim of colonization. (*Id*. at 8-9.)

- **"…containing the soul of a once-living being who is now trapped inside the gem…"**: In "Amphoman," human souls are trapped inside inanimate gems after they are zapped by Trell. (*Id*. at 5.) In *Steven Universe*, human souls are not trapped inside Gem characters.

- **"…and influences the hero's behavior…"**: In "Amphoman," a gemstone exists separately from its bearer and influences the latter's behavior. (*Id*. at 4.) In *Steven Universe*, Gem and gem-bearer are one and the same—the Gems *are* the characters.

- **"…and having those gems attaching to humans…"**: In "Amphoman," an inanimate gemstone attaches to a human's forehead once found. (*Id*. at 5.) In *Steven Universe*, gemstones do not "attach" to humans, nor give them powers. Only Gems have physical gemstones embedded on their bodies, and are born with them. (*Id*. at 7.)[5]

- **"…such that once triggered in a non-obvious way, they glow…"**: In "Amphoman," a "Trigger Event" (*e.g.*, water, sunlight) is required to activate a gem's temporary powers. (*Id*. at 4-5.) In *Steven Universe*, Gems have *permanent* magical powers that they wield by their own volition. Although Steven struggles with summoning his powers at first, he does not require a "Trigger Event" to activate his powers—as he discovers in Episode 1. (*Id*. at 7-8.)[6] To the extent both works involve gems that "glow," this is quintessential *scènes à faire* "flowing naturally from [the] theme" of magical gems. *MyWebGrocer,*

---

[5] Plaintiff contends that a *Steven Universe* character—the imaginary figure Ringo (incorrectly referred to as Ronaldo in the Opposition)—"fuses" with a gemstone. (Opp. Br. at 12.) He does not; Steven merely imagines Ringo placing a gem inside his hair. (D'Angelo Decl. Ex. 33, at 1:10-1:30, 7:50-11:35.)

[6] The conclusion to Episode 1 puts the lie to Plaintiff's claim (Opp. Br. at 12) that Steven's powers are "triggered" by a discontinued ice cream sandwich. (D'Angelo Decl. Ex. 15, at 9:00-10:35.) Plaintiff's related claim that *Steven Universe*'s depiction of blossoming flowers that are "activated" by sunlight somehow copied a character in "Amphoman" who turns into a hawk and shoots "sunlight bullets" (Opp. Br. at 12-13) is farcical on its face.

*LLC v. Hometown Info, Inc.*, 375 F.3d 190, 194 (2d Cir. 2004).

- **"…can be used to create gem-powered weapons and superhuman abilities…"**: The characters in the works share no superhuman abilities or weapons of choice (Mov. Br. at 4-8), and Plaintiff obviously cannot claim a monopoly over the use of weapons and superhuman abilities generally, which are ubiquitous in comic books and television and thus not entitled to protection. *See Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 567 (S.D.N.Y. 2009).[7]

- **"…can be activated by mental communication…"**: This appears to refer to an instance when an "Amphoman" villain summons demons inside of him. (Opp. Br. at 5 n.2; Compl. Ex. B, #7; D'Angelo Decl. Ex. 2 [Book 1 Remake], at 18 (p. 21 of PDF).) This never happens in *Steven Universe*, and, as noted above, characters in the show do not need to have their powers "activated," by mental communication or otherwise.

- **"…and extend to other items that don't need to bear a gem to be activated…"**: This appears to reference one "Amphoman" character's creation of a walking "shadow figure." (Opp. Br. at 5 n.2; Compl. Ex. B, #14; D'Angelo Decl. Ex. 5 [Issue 4], at 8-9.) No such shadow figure appears in *Steven Universe*.

- **"…and can pop off the wearer to defend the bearer."**: In "Amphoman," gems can be removed from their human bearers' foreheads. In *Steven Universe*, the physical gemstones that appear on the Gems' bodies do not "pop off"; instead, Gems retreat entirely into their physical gemstones when wounded or defeated. (Mov. Br. at 23.)

In sum, although both works employ the broad, unprotectable idea of magical gems, the ways in which the works *express* that idea are vastly different—which is all that matters for a substantial similarity analysis. *See Gaito*, 602 F.3d at 67.

The above-listed "expressions" (and others set forth in the chart on pages 5-6 of the Opposition) therefore do not appear in Episode 1 of *Steven Universe*.[8] But even assuming they

---

[7] Plaintiff claims that the works' main characters share an "amphibian-like tongue and the ability to jump extra high" (Opp. Br. at 12), but this too is false. Unlike Amphoman, Steven is not half-amphibian, and does not have a frog-like tongue. The image captured on page 12 of the Opposition shows Steven using his *shapeshifting* power. (Mov. Br. at 8; *see* Dkt. No. 49, Ex. G, at 7:15-9:00.) And, rather than having the ability to frog-jump, Steven instead is able to float in air—as revealed in the episode submitted as Exhibit F to Plaintiff's declaration, entitled "***Steven Floats***." (Dkt. No. 49, Ex. F, at 0:24-0:28, 2:35-5:00.)

[8] Defendants have already refuted nearly all of the other purported similarities referenced without explanation in Plaintiff's chart and sourced from Exhibit B to the Complaint, and respectfully refer the Court to their Moving Brief. (*See* Mov. Br. at 23-25.) Additionally, "expressions" #35, #56, and #58 listed in that chart (Opp. Br. at 5-6) do ***not*** appear in both works: (i) as noted above, in "Amphoman," King Trell "shrinks [humans] into tiny universe gem[s]" (Compl. Ex. B, #35; D'Angelo Decl. Ex. 7 [Issue 6], at 7), but this plot element appears nowhere in *Steven Universe*; (ii) there is no actionable similarity based upon the fact that Dr. Joules' *forehead* gem is occasionally

did, Episode 1 of *Steven Universe* does not copy the way in which Plaintiff has *arranged* his work—as his own patchwork chart, which draws from a variety of "Amphoman" issues, makes clear. (Opp. Br. at 5-6.) *See Gaito*, 602 F.3d at 67 ("our inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work") (citation omitted); *see also Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003) ("[I]nfringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation.") (citation omitted). A visual comparison confirms that Episode 1 of *Steven Universe* (D'Angelo Decl. Ex. 15) does not copy any particular "Amphoman" Issue, nor the coordination and arrangement of any storylines appearing therein.

The same is true for Episode 2 of *Steven Universe*. (Opp. Br. at 6-7.) It contains no isolated similarities to "Amphoman": the single giant robotic "Red Eye" hovering above Beach City in Episode 2 bears no resemblance to the thousands of tiny Planet Guiba gems in Issue 6 of "Amphoman" (D'Angelo Decl. Ex. 7, at 9; *id*. Ex. 16, at 1:30-2:30), and Rose Quartz's massive laser cannon in Episode 2 is an entirely different weapon than Bleash's handgun in Issue 7 of "Amphoman" (*id*. Ex. 8, at p. 5 of PDF; *id*. Ex. 16, at 6:50-11:00). Nor does Episode 2 copy the coordination and arrangement of elements in Plaintiff's work—as Plaintiff effectively concedes by citing to disparate issues of "Amphoman" in support of his argument. (Opp. Br. at 6-7.)

### B. There Is No Similarity Between the Works' Protected Elements

Plaintiff does not respond to the vast differences between the works' sequences of events, themes, settings, pace, and total concept and feel—because he cannot. (Mov. Br. at 16-22.) He

---

covered by his "hair curl" and that Steven wears a t-shirt over his *belly* gemstone (Compl. Ex. B, #56); and (iii) the plot element whereby Amphoman's gemstone alters his genetic makeup to cure his cancer (*Id*. Ex. B, #58; D'Angelo Decl. Ex. 2 [Book 1 Remake], at 9 (p. 12 of PDF)), is absent from *Steven Universe*, which has no cancer storyline whatsoever.

chooses instead to focus on isolated, out-of-context plot points in the two works (Opp. Br. at 8-9), which, upon closer inspection, bear no actionable similarity to one another:

- It is not true that *both* works involve main characters "destroy[ing] recovered gems with their bare hands" and "stor[ing] them in protective vials." In the cited issue of "Amphoman," Dr. Joules only *destroys* a gem; he does *not* store it. (D'Angelo Decl. Ex. 3, at 3.) In the cited episode of *Steven Universe*, Steven *saves* the gems he collects and encapsulates them within a protective bubble. (Dkt. No. 49, Ex. A, at 3:40-5:30.)

- The "mutants" in both works are nothing alike: "Amphoman" features a half-mosquito-half-man (D'Angelo Decl. Ex. 9), while *Steven Universe* features creatures with an amalgam of human and monster body parts. (Dkt. No. 49, Ex. D, at 9:46-10:40.)

- Both works do not "contain story lines with characters emerging from mirrors." In a single panel of "Amphoman," the aforementioned "shadow figure" retreats into a mirror. (D'Angelo Decl. Ex. 6, at 2.) In a single episode of *Steven Universe*, Steven sings a song about a character being trapped in a mirror. (Dkt. No. 49, Ex. B, at 2:00-2:36.) Isolated references to mirrors in both works hardly constitute actionable similarity.

- That the generic phrase "power of the gem" is uttered in both works—inevitable, given that they both concern the unprotectable idea of magical gems—is not actionable. *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072-73 (2d Cir. 1992).[9]

- As noted above, Gems do not and need not "activate" in *Steven Universe*—and there is no Gem "activation" in Episode 31. (D'Angelo Decl. Ex. 32, at 9:48-9:50.)

- As Plaintiff well knows, in "Amphoman," characters do not "combine to create a stronger character"; humans merely acquire powers when gemstones attach to their foreheads. (*Id*. Exs. 1 & 5.) By contrast, the characters in *Steven Universe* can merge physical forms to become entirely new characters, such as Opal (a combination of Pearl and Amethyst) and Stevonnie (a combination of Steen and Connie). (*Id.* Exs. 22 & 36.) There is nothing resembling Opal and Stevonnie in "Amphoman."[10]

The plot points set forth on pages 12-14 of the Opposition also do not demonstrate any actionable similarity between the works, as Defendants have already explained. (Mov. Br. at 23-25; *see supra* at footnotes 5-7 & 10 (discussing falsity of various claims on pages 12-14 of the

---

[9] *Twin Peaks Productions, Inc. v. Publications International, Ltd.*, 996 F.2d 1366 (2d Cir. 1993), to which Plaintiff cites (Opp. Br. at 8-9), is inapposite. There, defendant admitted to copying "89 lines of dialogue"—obviously far more substantial than a mere four words. *See* 996 F.2d at 1372.

[10] For the same reason, Plaintiff's claim that both works involve "characters [fighting evil] by fusing gems into entirely new beings and working with other characters that are fused with gems" (Opp. Br. at 13) is not borne out by the works themselves.

8

Opposition).)[11]  In any event, to the extent that *isolated* similarities between the works do exist, this alone does not establish substantial similarity.  *See Tufenkian*, 338 F.3d at 131 (the amount of protected expression that was copied must be "more than de minimis") (citation omitted); *Allen*, 739 F. Supp. 2d at 663 ("random similarities scattered throughout the works . . . cannot [by themselves] support a finding of substantial similarity") (citing *Williams*, 84 F.3d at 590). The principal legal question remains whether the works "*as a whole* [are] substantially similar." *Williams*, 84 F.3d at 590 (emphasis added).  A simple visual comparison reveals they are not.

Plaintiff also attempts to portray the works' main characters as substantially similar. (Opp. Br. at 10-11.)  But he does not come close to clearing the bar for substantial character similarity, which "is set quite high." *DiTocco v. Riordan*, 815 F. Supp. 2d 655, 667 (S.D.N.Y. 2011) (citation omitted), *aff'd*, 496 F. App'x 126 (2d Cir. 2012).  The adolescent Steven bears no resemblance to the adult Amphoman.  Even when Steven shapeshifts into an older version of himself, the two look nothing alike. (D'Angelo Decl. Ex. 23, at 5:55-11:30.)  As noted above, Steven neither mutates into a new character, nor requires a Trigger Event to use his powers, as Amphoman does.  Steven is not a "younger brother," but rather the only son of Rose Quartz and Greg Universe. (Mov. Br. at 7.)  Further, to the extent that both characters can be described as "awkward" and "corny," such generic traits cannot give rise to an infringement claim. *See Allen*, 739 F. Supp. 2d at 660-61 ("[W]here two diametrically opposed characters can be constructed based on plaintiff's examples of the allegedly infringing characteristics, there cannot be a finding

---

[11] Page limitations prevent Defendants from once again rebutting each of Plaintiff's claims derived from Exhibit B to the Complaint, and from addressing the assortment of misrepresentations, distortions, and generalizations that Plaintiff cobbles together in Exhibit H to his declaration—which effectively regurgitates the same claims made in Exhibit B to the Complaint in a more protracted fashion (in the apparent hope that the Court will confuse volume with substance). (Dkt. No. 49, Ex. H.)  Exhibit H is obviously improper and a brazen violation of the Court's rules concerning pages limits to briefs and exhibits—and should therefore be disregarded in its entirety.  But even if the Court is inclined to consider that exhibit, the notes set forth therein are unavailing for the same reasons discussed herein and in Defendants' Moving Brief.  Ultimately, the works themselves control over contrary descriptions thereof (*see supra* at 3-4), and any purported similarities will fail to materialize upon the Court's review of those works, or otherwise reveal themselves to be unprotectable *scènes à faire* or public domain elements.

9

of substantial similarity."). Courts have repeatedly rejected character infringement claims where far greater similarities were present than are here. *See, e.g.*, *DiTocco*, 815 F. Supp. 2d at 668-69; *Sheldon Abend*, 748 F. Supp. 2d at 208-09; *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 301-12 (S.D.N.Y. 1999); *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1261 (S.D.N.Y. 1995); *Littel v. Twentieth Century Fox Film Corp.*, No. 89-cv-8526 (DLC), 1995 U.S. Dist. LEXIS 9340, at *38-40 (S.D.N.Y. July 6, 1995).

### IV. PLAINTIFF'S JUDICIAL NOTICE ARGUMENT IS CONTRARY TO LAW

The Court may properly take judicial notice of publications illustrating that the concept of magical gems is in the public domain. Judicial notice is not, as Plaintiff claims, limited to prior court filings. (Opp. Br. at 9.) On a motion to dismiss, the Court may judicially notice any facts "not subject to reasonable dispute." *See Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009). There is no "dispute" that magical gems appear in popular culture, mythology, and religion, as reflected in countless literary works, reference works, films, and video games. Defendants have not proffered any contentious interpretations of the works in which magical gems appear, nor submitted them for the truth of the matters discussed therein, but rather to highlight the undisputed *existence* of magical gems therein, which Plaintiff does not, and cannot, dispute. *See id*. at 669 (judicial notice properly taken of newspaper articles and SEC filings for "fact" of press coverage and that filings contained certain information). But even absent judicial notice, there is no substantial similarity for the other reasons discussed herein.[12]

### CONCLUSION

Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

---

[12] Finally, Plaintiff's arguments as to TBS, Inc. are unavailing. (Opp. Br. at 15-16.) Plaintiff has made no specific allegations of infringement against TBS, Inc., and his Complaint should not be construed liberally to include allegations that he never made because he is no longer proceeding *pro se*. *See Muhammad v. Wal-Mart Stores East, L.P.*, No. 10-CV-6074, 2012 U.S. Dist. LEXIS 108551, at *5 n.6 (W.D.N.Y. Aug. 2, 2012). In any event, Plaintiff's claim against TBS, Inc. should be dismissed, and his alternative request to amend his allegations as to that entity denied as futile, because no substantial similarity exists.

Dated: New York, New York
       June 24, 2017                                  LOEB & LOEB LLP

                                        By: */s/ Christian D. Carbone*
                                             Christian D. Carbone (CC-6502)
                                             Frank D. D'Angelo (FD-0911)
                                             345 Park Avenue
                                             New York, New York 10154-1895
                                             212-407-4000

                                             *Counsel for Defendants The Cartoon Network, Inc., Turner Broadcasting System, Inc., Boom Entertainment, Inc., Rebecca Sugar, and Ian Jones-Quartey*

                                                                                  13590771