USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/08/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                              :
MICHAEL RICHARD KAYE,                     :
                              Plaintiff,    :
                                                     : 16 Civ. 8558 (LGS)
                -against-                    :
                                                      : **OPINION AND ORDER**
CARTOON NETWORK INC., et al.,          :
                                     Defendants.   :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       On January 3, 2016, Plaintiff Michael Kaye filed this copyright infringement action against Cartoon Network, Inc.; Turner Broadcast Systems, Inc.; Cable News Network, Inc.; Time Warner, Inc.; Boom Entertainment, Inc.; Rebecca Sugar; Ian Jones-Quartey and Does 1-10. The Complaint alleges that Defendants violated the Copyright Act, 17 U.S.C. § 101 *et seq.*, by copying Plaintiff's *Amphoman* comic book series in their *Steven Universe* television series. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss the Complaint on the ground that *Steven Universe* is not substantially similar to *Amphoman* as a matter of law. As discussed below, Defendants' motion is granted.

I.    **BACKGROUND**

       The facts below are drawn from the Complaint and documents and other evidence integral to the Complaint, including Plaintiff's comic book series, *Amphoman*, and a significant portion of the television series, *Steven Universe*. The facts are construed in the light most favorable to Plaintiff as the non-moving party. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

### A.     Amphoman

Plaintiff began developing the Amphoman character in 1989, and holds thirty-one related copyrights, the first of which he obtained in 1995.  Between 2012 and 2013, Plaintiff self-published *Amphoman* as a nine-part comic book series.  The comic books tell the story of Dr. Ulrius Joules, a marine biologist striving to cure his own rare form of terminal cancer.  Dr. Joules also worries about the money he lost in the "mortgage housing crisis," his expensive car loan payments, lack of a pension and the American healthcare system.  He uses profane and sexually explicit language, often in Yiddish, throughout the comic books.

Dr. Joules lives in a condo in Fort Lauderdale.  One day, he finds a green gem that fell from space.  After Dr. Joules accidentally gets water on the gem, it magically fuses into Dr. Joules' forehead.  Since then, whenever Dr. Joules gets wet, he transforms into Amphoman, an amphibious male superhero.  Amphoman has a long powerful tongue and slippery skin.  He can jump great distances, scale walls, swim at "stupendous" speed and is cured of cancer.  Those superpowers and the freedom from cancer last only a few hours, after which Amphoman transforms back to Dr. Joules, until he gets wet again.

Amphoman's gem contains the soul of a frog, which was placed there by an evil space king.  Other gems that have landed in Fort Lauderdale also contain the souls of animals and each gem has its own trigger resulting in its own unique superpowers.  For example, a gem with the soul of an electric eel endows its human host with electric energy depicted as lightning bolts.  People who find these gems "trigger" them and transform into super-beings, usually villains, who cause mayhem across Fort Lauderdale.

Amphoman saves the city by fighting these super-villains to return them to their human form, at which point he is able to dislodge and crush their gems.  The super-villains include

Black Bull, a male super-villain who wants to create an army of womanizers to "teach girls that men are in charge," and Shadow Witch, the only female character.  Amphoman is sometimes accompanied by Bleash, another super-hero who has learned to manipulate his gem's trigger and control his powers.

### B.     Steven Universe

Defendants are the creators, distributors and copyright holders of the animated television series *Steven Universe*, which first aired on Cartoon Network in 2013.  The show, with scores of episodes, is still being produced and aired.  It tells the story of a boy named Steven who lives with three "Crystal Gem" female guardians, Garnet, Pearl and Amethyst, in a magical temple in "Beach City."  Crystal Gems are anthropomorphic space rocks.  Good Crystal Gems, like Steven's guardians, protect Earth from invasions by evil Crystal Gems.

Steven is half Crystal Gem (on his mother's side) and half human (on his father's side). Crystal Gems have gemstones embedded in their bodies, symbolizing that the characters are Crystal Gems.  Steven's pink gemstone is in his stomach.  Crystal Gems have unique weapons that emanate from their gems, and Steven can summon a magical shield from his gemstone. While the gemstones occasionally glow, they are not the source of a Crystal Gem's magical powers; a Crystal Gem's superpowers are innate.  For example, Steven can heal and engulf himself in a protective bubble, and Garnet can see into the future.  Over time, Steven learns to use his powers to help protect Earth from evil Crystal Gems.

Despite having superpowers, Steven loves "Cookie Cat" ice-cream sandwiches and is passionate about arcade videogames.  He hopes to fit in with Beach City's popular kids and scouts for potential playdates.  During the course of their adventures, Steven and his Crystal Gem companions learn valuable life lessons; each *Steven Universe* episode comes with a

3

message.  For example, one episode teaches that everyone is different and things come at one's own time.  Another episode shows that pretending to be someone you are not will cause more harm than good.  The show is also replete with musical-theater-like numbers; the characters sing, Steven plays the ukulele and the piano, and his father plays the guitar.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Where the disputed works are attached to or incorporated by reference in the complaint, a district court can "consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).  In a copyright infringement action, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings."  *Gaito*, 602 F.3d at 64 (internal citations omitted); *accord Dean v. Cameron*, 53 F. Supp. 3d 641, 643–44 (S.D.N.Y. 2014).

The Complaint was filed when Plaintiff was acting *pro se*, although he is now represented.  Courts are obligated to construe *pro se* pleadings liberally, "to raise the strongest claims that it suggests."  *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citation omitted).  No special deference is required in assessing substantial similarity because that assessment turns on a comparison of the works and not on the artfulness of the pleading.

*See Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991) ("[W]hat is required is only a visual comparison of the works").

"In order to establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Gaito*, 602 F.3d at 63 (citations omitted); *accord TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 595 (S.D.N.Y. 2013). On a motion to dismiss, a district court may assume that actual copying by defendants occurred and proceed to the question of substantial similarity. *Gaito*, 602 F.3d at 63; *accord Cameron*, 53 F. Supp. 3d at 647.

## III. DISCUSSION

Defendants' motion to dismiss is granted because "no reasonable jury, properly instructed, could find" that *Steven Universe* is substantially similar to *Amphoman* in concept, characters, settings and "overall feel." *Gaito*, 602 F.3d at 63, 66.

### A. "Substantial Similarity" Applicable Law

The Copyright Act gives owners of a copyright "exclusive rights," 17 U.S.C. § 106, to protect "original works of authorship," 17 U.S.C. § 102(a). Not all elements of a work are entitled to copyright protection. For example, scènes-à-faire or "elements of a work that are indispensable, or at least standard, in the treatment of a given topic—like cowboys, bank robbers, and shootouts in stories of the American West—get no protection." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102 (2d Cir. 2014) (internal quotation marks omitted).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and

regard [the] aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (alteration in original, internal quotation marks omitted). A "more discerning" test applies when a plaintiff's work contains both protectable and un-protectable elements. *Gaito*, 601 F.3d at 66; *accord DiTocco v. Riordan*, 496 F. App'x 126, 128 (2d Cir. 2012) (summary order). Courts are not to consider only the protectable elements of the two works in isolation. *Boisson v. Banian*, 273 F.3d 262, 272 (2d Cir. 2001). "Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996); *accord Hallford v. Fox Entm't Grp.*, No. 12 Civ. 1806, 2013 WL 541370, at *5 (S.D.N.Y. Feb. 13, 2013), *aff'd*, 556 F. App'x 48 (2d Cir. 2014) (summary order).

In applying either test, the task is to compare holistically the works' "total concept and overall feel . . . as instructed by our good eyes and common sense." *Gaito*, 602 F.3d at 66 (internal citations omitted); *accord Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 279 (S.D.N.Y. 2016); *Cameron*, 53 F. Supp. 3d at 646. To aid the Court in its determination of substantial similarity, the Court must examine similarities in "total concept and feel, theme, characters, plot, sequence, pace, and setting," which "is especially appropriate in an infringement action involving children's works, because children's works are often less complex than those aimed at an adult audience." *Crichton*, 84 F.3d at 588–89.

### B.     Concept and Plot

The core similarity between *Amphoman* and *Steven Universe* is that both employ characters associated with magical gems, but the two works use the concept in different ways. In *Amphoman*, gems are inanimate objects from space and contain the soul of an animal (*e.g.*, a

6

frog).  The gems are invasive; they fuse into the foreheads of the humans who find them and impart superpowers related to the animal whose soul is contained in the gem.  Each gem has a particular trigger, which temporarily activates the gem's superpowers.  Amphoman's gem is triggered by water, which transforms him into a half-man, half-frog superhero, whereas sunlight transforms Bleash into a half-man, half-hawk superhero.

The gems cause most humans in whom they lodge to become malevolent super-villains. They cannot control their superpowers and cause destruction across Fort Lauderdale. Amphoman and his friend Bleash are exceptions; they have learned to control their powers and manipulate their gems' triggers.  The gems seem to be a metaphor for the cancer that has infected Dr. Joules and for which he seeks a cure; they lodge in the bodies of their human hosts, transforming them usually in destructive ways.

Most issues of *Amphoman* introduce a new gem-infected villain, whom Amphoman fights and overcomes to save Fort Lauderdale.  He defeats the super-villains by removing and then crushing their gems, which is possible only when the super-villain transforms back to human form (*i.e.*, their gem is not triggered).  Even though Dr. Joules in human form cannot find a cure for his cancer, as superhero Amphoman, he overcomes and destroys the gems that infect others and make them villains.  Mostly, the comic books follow the adventures of Amphoman, rather than the human life of Dr. Joules.

In *Steven Universe*, Crystal Gems are anthropomorphic characters, not inanimate objects. Crystal Gems have magical powers that they wield of their own volition.  Steven lives with three female Crystal Gems, and is half Crystal Gem on his mother's side.  Crystal Gems' superpowers are permanent and require no trigger.  Rather than being invasive and destructive, Crystal Gems are the heroines of *Steven Universe*.

The plot of both works is similar in that the protagonists fight and defeat the villains. This common storyline is not actionable as it is a scènes-à-faire common to superhero works, as well as many other genres. *Warner Bros. Inc. v. Am. Broad. Cos.*, 654 F.2d 204, 210 (2d Cir. 1981) ("[B]oth heroes fight . . . villains; however, this suggested similarity concerns something hardly more specific or particular than the classic theme of good versus evil"); *see also DiTocco v. Riordan*, 815 F. Supp. 2d 655, 670 (S.D.N.Y. 2011); *aff'd*, 496 F. App'x 126 (2d Cir. 2012) ("[T]he use of magic weapons—are scenes a faire in fantasy adventure stories"); *Lewinson v. Henry Hold & Co.*, 659 F. Supp. 2d 547, 567 (S.D.N.Y. 2009) ("[I]n a work about a superhero, scenes that depict the superhero perform[ing] feats of miraculous strength, wearing a tight-fitting acrobatic costume[ ], battling wealthy megalomaniacal villains, exercising the power of self-propelled flight, or leading a double life are all unprotectable scènes à faire") (internal quotation marks omitted). The plot of the two works is dissimilar in that, in addition to the good-versus-evil adventures, Steven's story is a *Bildungsroman*, or coming of age story that includes Steven's relatively normal childhood playing with his best friend, bonding with his father and attempting to fit in with other Beach City children.

### C.     Characters and Settings

"In determining whether characters are similar, a court looks at the 'totality of [the characters'] attributes and traits as well as the extent to which the defendants' characters capture the 'total concept and feel' of figures in [the plaintiff's work]." *Sheldon Abend Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986)). Neither Steven Universe's physical appearance nor his "total concept and feel" are reminiscent of Amphoman.

Plaintiff's memorandum of law provides the graphic below and argues that "Amphoman looks like an older version of young Steven Universe, with the same round face, same shaped ears, same dark eyebrows, and similar dark hair."



That argument is unpersuasive as the image above labeled "Ampho" is actually Dr. Joules, who possesses no magical powers. The more apt comparison is between Amphoman (Dr. Joules when transformed by his gem) and Steven, who bear no resemblance to each other.



Amphoman has a traditional superhero physique, a long face, no hair and bug eyes that are meant to resemble a frog's eyes. He wears a tight green outfit and has a small green gem on his forehead. Steven wears jeans and a bright red shirt with a yellow star on it, and has a large, permanent, pink gem -- where a typical belly button would be located -- from which he yields his superpower shield. "The bar for substantial similarity in a character is set quite high," and the similarity between Amphoman and Steven falls short of this standard. *Spielberg*, 748 F. Supp. 2d at 208.

The differences in "totality of . . . attributes and traits" are equally apparent between Steven Universe and Amphoman. *Id.* Steven is a cheerful child who has childish interests like "Cookie Cat" ice-cream sandwiches and videogames. He wants to be friends with the popular kids in Beach City and scouts for potential playdates. Amphoman is an acerbic adult struggling with the trauma of his own terminal illness. He complains about the money he lost in the mortgage housing crisis, his expensive car loan payments, lack of a superhero pension and the American healthcare system.

Other important characters are equally dissimilar in the two bodies of work. In *Amphoman*, except for the psychic who transforms to Shadow Witch, they are all male, "macho," indifferent to women or misogynistic. The character Black Bull wants to create an army of "womanizers" to "teach girls that men are in charge." In *Steven Universe*, Steven's three Crystal Gem guardians are compassionate, caring females who spend their days protecting Earth and its citizens from Gemworld threats and raising Steven.

Courts have denied claims of substantial similarity when comparing characters more similar than those here. *See, e.g.*, *Cabell v. Sony Pictures Entm't, Inc.*, 714 F. Supp. 2d 452, 454 (S.D.N.Y. 2010), *aff'd*, 425 F. App'x 42 (2d Cir. 2011) (summary order) (granting summary judgment to a defendant where the main characters were both military-trained hairstylists who fight crime and wield hairdryers as weapons); *DiTocco*, 496 F. App'x at 128 (summary order) (affirming a 12(b)(6) dismissal where "[b]oth sets of books chronicle the adventures of a young male protagonist named after the Greek hero Perseus" set in modern times); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311–12 (S.D.N.Y. 1999) (granting summary judgment where the main characters in both works were named Nicholas Gaunt and were born half vampire because their mothers were bitten by vampires during their respective pregnancies).

That the settings of the two works are superficially similar does not make them substantially similar because of the relative unimportance of the setting in both works. *Amphoman* takes place in Fort Lauderdale, and *Steven Universe* takes place in fictional "Beach City." In both works, the story line is not tied to the beach theme. Many of Steven's adventures with the Crystal Gems take place in dark mountainous regions or inside their home. In *Amphoman*, the scenes take place both inside and outside, but the outside scenes usually do not show a beach and instead depict grass and trees to indicate that the characters are outside. Also, Amphoman lives in a condo whereas Steven lives in a magical temple. The setting of the two works does not make them substantially similar.

### D.     Overall Feel

The difference between the two works is starkest when analyzed at the macro level. No reasonable jury could conclude that *Steven Universe* is substantially similar to *Amphoman* after holistically comparing the works' "overall feel . . . as instructed by [their] good eyes and common sense." *Gaito*, 602 F.3d at 66 (citations omitted).

A "dramatic difference in length" between the two works "immediately undermines [the] suggestion that the authors similarly selected, coordinated and arranged the elements of their work." *Allen v. Scholastic Inc*., 739 F. Supp. 2d 642, 657 (S.D.N.Y. 2011) (internal quotation marks omitted). *Amphoman* is a nine-part comic book series that spans approximately 120 pages. By contrast, *Steven Universe* is an animated cartoon with scores of episodes, forty-nine of which were submitted on this motion.

The differences in the themes and moods of the two works are palpable. *Steven Universe* is designed for young children. It tells the optimistic and essentially happy story of a playful child, with some poignant moments. Steven goes on adventures with his Crystal Gem guardians

11

and friends, and in each episode learns a valuable life lesson. Steven's is a coming of age story as he learns about his parents, learns to use his powers and to accept himself. The show is also dotted with musical comedy numbers, reflecting the happy mood.

By contrast, *Amphoman* is a dark series intended for adults. Dr. Joules is a sardonic marine biologist striving to cure his own terminal cancer. The comics contain sexual content and adult language, often in Yiddish. Amphoman assures his mother that he is not a "fagala" (a homophobic Yiddish slur), nor a "nymphoman" and explains that "ho is a bad word." He warns his male friend Bleash, "[j]ust don't kiss me -- I will shoot mind you," and exclaims during a fight, "never thought I'd be putting my tongue on some guy." The comic refers to smartphones as iPutzs, and Amphoman complains about "furcockt" gems – Yiddish profanities. A woman asks Amphoman whether he is a "nympho," at which point he asks her on a date. Amphoman refers to the super-villain Black Bull as a "perv." No reasonable jury could conclude that *Amphoman* and *Steven Universe* are substantially similar in overall feel.

### E. Purported Similarities

The Complaint appends a list of sixty purported similarities between *Steven Universe* and *Amphoman* in Exhibit B. Many of the similarities are too general to affect the analysis. *See, e.g.*, Similarity #2 ("Universe gems come in different shapes"); Similarity #16 ("Gem power can cause violence"); Similarity # 22 ("Universe gems fall from the sky"). *Cf. Fulks*, 207 F. Supp. 3d at 281 ("Plaintiff's alleged similarities in orientation and camera angle -- 'left' facing and shot 'from the left'-- fare no better, because they are so general . . ."). Other similarities listed in Exhibit B prove false upon examination of the works. For example, the following appear only in *Amphoman*, and not *Steven Universe*: Similarity #5 ("Universe gems can be activated with a specific trigger event"); Similarity # 19 ("Universe gems pop off defeated gem bearers");

Similarity #13 ("Universe gem contains the soul of once living being who is now trapped inside…").

Three isolated similarities not included in Exhibit B are worth discussing, although they do not change the calculus. First, Pearl, one of Steven's Crystal Gem guardians, has a gemstone embedded in her forehead. While the location of Pearl's gemstone is reminiscent of *Amphoman's* characters, the similarity ends there. Crystal Gems all have permanent gems, but each is in a different place on their body. Pearl's gem happens to be on her forehead. In *Amphoman*, humans are not born with gems. When a human finds and "triggers" a gem, it implants in the character's forehead. A gem can be removed only when the character is in human form. Other than the location of her gem, Pearl is nothing like Amphoman.

Second, in an eight-second scene in *Steven Universe*, Steven is practicing shapeshifting and his tongue becomes extra-long. Steven does not use his extra-long tongue to fight or in any other way similar to Amphoman. Third, in a single episode of *Steven Universe*, a character named Ringo steals a magical gemstone and places it in his hair, thereby gaining superpowers. Ringo becomes a larger and more colorful version of himself, and he shoots magical light beams from the gem in his hair. He is quickly defeated by actual Crystal Gems and returned to human form. Ringo never becomes part animal, nor does the gem actually fuse to his body. None of the isolated similarities between *Amphoman* and *Steven Universe* provides a sufficient basis for a reasonable jury to find substantial similarity between the works' "total concept and overall feel." *Gaito*, 602 F.3d at 66.

Plaintiff's request for leave to file an amended complaint is denied because the finding of a lack of substantial similarity turns on the works themselves and not on the artfulness or sufficiency of the pleading. "Leave to amend should be 'freely give[n] ... when justice so

requires,' Fed. R. Civ. P. 15(a)(2), but should generally be denied in instances of futility . . . ." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (some internal quotation marks omitted). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017). No revised pleading could cure the fundamental infirmity in Plaintiff's case. Accordingly, leave to amend would be futile and is therefore denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The case is dismissed with prejudice. The Clerk of Court is respectfully directed to close all outstanding motions and terminate the case.

Dated:  November 8, 2017
        New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**